## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :          MAGISTRATE NO. 10-Cr.-215-M-01
                       :

         v.           :
                       :

SCOTT J. BLOCH,       :          **FILED**
                       :

       Defendant.    :       APR 2 7 2010

                                           Clerk, U.S. District and
              **STATEMENT OF OFFENSE**          Bankruptcy Courts

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its

attorney, the United States Attorney for the District of Columbia, and defendant SCOTT J.

BLOCH, with the concurrence of his attorney, William M. Sullivan, Jr., agree and stipulate as set

forth below.  Defendant BLOCH is charged by Information with a misdemeanor count of

Criminal Contempt of Congress, pursuant to 2 U.S.C. § 192.

### Background of the Defendant and the Office of Special Counsel

1.     The United States Office of Special Counsel ("OSC") is an independent federal

agency charged with safeguarding the merit-based employment system by protecting federal

employees and applicants from prohibited personnel practices ("PPP").  As such, OSC receives,

investigates, and prosecutes allegations of PPPs, with an emphasis on protecting federal

government whistleblowers.

2.     OSC has its principal office at 1730 M Street, Northwest, Suite 300, in

Washington, D.C.

3.     OSC is headed by a presidential appointee whose title is "Special Counsel." Pursuant to federal statute, 5 U.S.C. § 1211(b), the Special Counsel is appointed by the President, with advice and consent of the Senate, for a term of five years.

4.     On June 26, 2003, President George W. Bush nominated BLOCH for the position of Special Counsel to the United States Office of Special Counsel.  On January 5, 2004, BLOCH began working as Special Counsel.

5.     At all times relevant to this Information, BLOCH served in the position of Special Counsel to the United States Office of Special Counsel.

### Defendant's Discussions Regarding a "Seven Pass" or "Seven Level" Wipe

6.     Prior to November 6, 2006, BLOCH and an individual discussed, among other things, certain computer problems that each of them had experienced.  In these discussions, the individual informed BLOCH that the individual had previously used an entity named "Geeks On Call" to successfully fix his own computer using, among other things, a "seven-level wipe."

7.     On or about November 6, 2006, BLOCH discussed with colleagues at the OSC a computer procedure known as a "seven-pass" or "seven-level" wipe in relation to the OSC being able to obtain archived documents or emails.  During these discussions,  BLOCH said he was aware that a search of an individual's computer should be able to recover deleted emails and other deleted files unless a "seven-pass" or "seven-level" wipe was performed on that individual's computer.

8.     Therefore, by and before November 6, 2006, BLOCH had an understanding that if a "seven-pass" or "seven-level" wipe was performed on a computer, then it would be virtually impossible for anyone to recover deleted files or emails ever again from that computer.

2

**BLOCH Orders that a seven-level wipe be performed on four OSC computers**

9.      On or about December 11, 2006, BLOCH directed a member of his senior staff to contact Geeks On Call to perform a seven-level wipe of his two OSC computers.

10.      On the morning of December 18, 2006, a Geeks On Call technician arrived at OSC's office in the District of Columbia.  BLOCH was not present, and a senior staff member called BLOCH to inquire what BLOCH wanted the technician to do while he waited for BLOCH to arrive to have his computer serviced.  BLOCH instructed this senior staff member to direct the technician to perform a "seven-level wipe" on the C: drives (or "local" hard drives,) of the OSC computers assigned to two former non-career appointees in the immediate office of the Special Counsel.  The technician performed these wipes as instructed.

11.      The Geeks On Call technician then returned to the OSC office later during the afternoon of December 18, 2006.  Upon his return that afternoon, the technician was instructed by BLOCH to perform a "seven-level wipe" on two additional OSC-issued laptop computers, each of which was assigned to BLOCH.  Prior to performing these two additional "seven-level wipes," the technician was directed by BLOCH to first make an archival copy of various documents and files that were contained on the C: drive of one of BLOCH's OSC laptop computers.  The technician copied these files to a thumb drive and then handed the thumb drive to BLOCH. The technician then performed the wipes as instructed.

3

## The Wall Street Journal Article

12.     On November 28, 2007, the Wall Street Journal published an article entitled,

*"Head of Rove Inquiry in Hot Seat Himself, Bloch Used Private Company, Geeks On Call, to*

*Delete Files On His Office Computer."* This article, among other things, reported that in

December of 2006, BLOCH directed the deletion of certain files contained on his OSC-issued

computer as well as the computers of two of his top political aides by enlisting Geeks On Call to

perform a "seven-level wipe" on these computers.

## Congress Investigates BLOCH's Hiring of Geeks On Call

13.     By letter dated December 6, 2007, the Chairman and Ranking Minority Member

of the United States House of Representatives Committee on Oversight and Government Reform

("House Oversight Committee"), wrote to defendant BLOCH regarding the media reports that

BLOCH had authorized "seven-level wipes"of OSC computers issued to BLOCH and certain of

his senior staff.  The letter read in part:

> We are writing regarding recent reports that in December 2006, you
> directed the deletion of files on a computer you used at your office by
> using the PC-help service Geeks on Call, and that you also directed this
> service to erase files on computers of two of your top aides.  According to
> press accounts, the "seven level wipe" cleansing process that Geeks on
> Call used limits subsequent restoration of files, and the cost of the process
> was billed to an agency credit card.
>
> We are interested in gaining understanding of several issues raised by
> these reports, including the rationale for using non-government IT
> personnel to perform this service and the rationale for using a "seven level
> wipe."

This letter concluded by asking that BLOCH agree to participate in a transcribed interview

regarding his reported use of Geeks On Call in December of 2006.  Congress had the

4

constitutional power to make inquiry and conduct oversight of, among other things, the use of

federal government property and resources as well as the proper operation of the OSC.

Accordingly, the House Oversight Committee was duly empowered to conduct the investigation

and the inquiry concerning BLOCH's use of Geeks On Call to conduct "seven level wipes" on

OSC computers.

14.     As a result of these inquiries made by the House Oversight Committee, BLOCH

made himself available to be interviewed by members of the Committee's staff in March of

2008.

### Committee Staff Interview the Defendant

15.     On March 4, 2008, BLOCH submitted to an interview with the staff of the House

Oversight Committee.

16.     As part of the March 4, 2008, interview, BLOCH was asked about, among other

things, whether and why he:  (i) directed the deletion of emails or files on any of BLOCH's OSC-

issued computers in December of 2006 by using the computer repair service Geeks On Call; (ii)

directed that Geeks On Call delete emails or files contained on the computers of two of his OSC

aides; and (iii) directed that any such deletion of computer files be done by use of a "seven-level

wipe" process.  Moreover, BLOCH was asked whether he was familiar with the term "seven-

level wipe" before December of 2006.

17.     Specifically, during the March 4, 2008, interview, the following exchanges took

place:

### Excerpt No. 1

Q:      Did you tell this [Geeks On Call technician] what you believed was wrong
        with the computer?
A:      No. I had no information from the person or to the person. He just
        showed up, said what they were going to do and they did it.

### Excerpt No. 2

Q:      Did [the Geeks on Call technician] give you any other options for how to
        address the problem with your computer?
A:      No. We had no discussions about the problem itself or why he was doing
        what he was doing. He just came in, said what he was going to do and he
        did it.

### Excerpt No. 3

Q.      So did you select the seven level wipe? Did you request the seven level
        wipe?
A.      No, I did not. I do not know what a seven level wipe is, never
        heard of it before this, didn't know that I needed a wipe or a level
        of wipe, you know. All I knew is I had a computer problem that
        was not solved by my people and they could not figure out what it
        was or how to deal with it. And then my computer crashed and that
        was it. I knew I didn't need further loss of documents and
        corruption to know that I needed to seek some other solution. . .
Q:      What instructions if any did you give [the Geeks On Call technician] about
        transferring your files to a flash drive?
A:      None.
Q:      What discussions if any did you have with [the Geeks On Call technician]
        about transferring files to the flash drive?
A:      None other than what I've told you. He told me what he was going to do,
        how he was going to do it, and he did it.

### Excerpt No. 4

Q:     And to the best of your knowledge, Geeks only worked on one PC?

A:     That is the only one I asked them to be - - whoever was hired. I didn't want to hire Geeks per se. I didn't know their name. <u>But whoever we were going to hire, I only needed them to work on my computer. That's all I knew.</u>

Q:     So if there was a second computer that was worked on or a third computer that was worked on, you have no knowledge of that.

A:     <u>As I sit here now, yes, that's correct.</u>

### Excerpt No. 5

Q.     And do you remember whether that was [the Geeks On Call technician] that used the term or the private individual that you had discussed?

A      I think it was probably both, but I don't know for a fact. <u>I can tell you categorically I didn't seek out seven level wipe because I don't know what that is. I still don't know what that is.</u>"

**Defendant's Withholding of Pertinent Information from the Committee**

18.     On or about March 4, 2008, in the District of Columbia and elsewhere, BLOCH

having been requested by the House Oversight Committee to provide information upon a matter

of pertinent inquiry before the Committee, unlawfully and willfully did make default by refusing

and failing to state fully and completely the nature and extent of his instructions that Geeks On

Call perform "seven level wipes" on his OSC-issued computers as well as the OSC-issued

computers of two non-career OSC appointees in December of 2006, as set forth in the

underscored statements and representations noted in Excerpts 1 through 5 above.  In making the

underscored statements and representations noted in Excerpts 1 through 5 above, defendant

BLOCH unlawfully and willfully withheld pertinent information from the Committee.

<div style="margin-left:40%">

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. BAR NUMBER 447-889
555 4th Street, N.W., 5th Floor
Washington, D.C.  20530
(202) 514-6600

</div>

By:     _____
        GLENN S. LEON
        New York Bar
        Assistant U.S. Attorney
        Fraud and Public Corruption Section
        555 4th Street, N.W.
        Washington, D.C.  20530
        (202) 305-0174
        Glenn.S.Leon@usdoj.gov

By:     _____/s /_____
        JAMES MITZELFELD
        Assistant U.S. Attorney

<div style="text-align:center">8</div>

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense.  Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, William M. Sullivan, Jr. I agree and stipulate to this Statement of Offense.

Date: April 27, 2010

Scott J. Bloch
Defendant

I have discussed this Statement of Offense with my client, Scott J. Bloch.  I concur with his decision to stipulate to this Statement of Offense.

Date: April 27, 2010

William M. Sullivan, Esq.
Attorney for Defendant Scott J. Bloch

9